UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| POLOGA R., an Individual, | Case No.: 2:18-02756 ADS |
|---|---|
| Plaintiff, | |
| v. | |
| ANDREW M. SAUL, Commissioner of Social Security, | MEMORANDUM OPINION AND ORDER |
| Defendant. | |

## I. INTRODUCTION

Plaintiff Pologa R.[1] ("Plaintiff") challenges Defendant Andrew M. Saul[2], Commissioner of Social Security's (hereinafter "Commissioner" or "Defendant") denial of his application for a period of disability and disability insurance benefits ("DIB"). Plaintiff contends that the Administrative Law Judge ("ALJ") improperly rejected his allegations of daytime somnolence in assessing his residual functional capacity. For the reasons stated below, the decision of the Commissioner is affirmed, and this matter is dismissed with prejudice.[3]

## II. FACTS RELEVANT TO THE APPEAL

Plaintiff last worked on December 12, 2014 as a truck driver and testified he stopped working due to his sleep apnea. (Administrative Record "AR" 173). When Plaintiff filed his claim for social security benefits on February 12, 2015, he alleged disability beginning December 12, 2014 (AR 263), based on sleep apnea, diabetes type 2, gout, hemorrhoid and hypertension. (AR 195).

Plaintiff here makes no claim of error related to any of his asserted medical conditions other than daytime somnolence related to sleep apnea.[4] Plaintiff argues that

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.
[2] On June 17, 2019, Saul became the Commissioner of the Social Security Administration. Thus, he is automatically substituted as the defendant under Federal Rule of Civil Procedure 25(d).
[3] The parties filed consents to proceed before the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), including for entry of final Judgment. [Docket("Dkt.") Nos. 15, 19].
[4] Indeed, Plaintiff makes no claim of error with regard to the ALJ's assessment of the medical records or the ALJ's findings with regard to the medical opinions. Thus, this Court's review is limited only to whether the ALJ properly accounted for Plaintiff's

the ALJ failed to properly account for his daytime somnolence when assessing his residual functional capacity and finding he could perform work with a limited range of light level exertion. It is Plaintiff's contention that he cannot engage in any work activity because his work cycle would be interrupted due to his need to take a 2-3 hour nap once per day.

Plaintiff's medical records reveal that Plaintiff has been diagnosed with sleep apnea, resulting in daytime somnolence. (AR 333, 335, 468, 729). In medical progress notes from January 2015, the status of Plaintiff's sleep apnea was described as "severe exacerbation" and "inadequately controlled" and that Plaintiff was on disability "[r]eported to DMV for severe sleep apnea with noncompliance." (AR 333-34). Plaintiff was prescribed medical treatment in the form of a continuous positive airway pressure ("CPAP") machine, which Plaintiff's medical records contain several notes of non-compliance in Plaintiff's use of the CPAP machine. (AR 334, 643). The medical notes state that while he previously reported noncompliance with his CPAP, after switching to nasal pillows, he began using the CPAP compliantly. (AR 643). In August 2016, Plaintiff was referred for a PAP (positive airway pressure) titration study (sleep study). (AR 645). The medical notes also state that, after the sleep study, Plaintiff switched to an automated positive airway pressure ("APAP") machine and that his symptoms related to sleep apnea had improved with "[f]ar less episodes of daytime somnolence," but did note that he had some remaining "residual fatigue." (AR 643 and 646). The medical notes of March 2017 further indicate that Plaintiff had "requested extension of off-work note until he completes his hearing to his DMV commercial license renew",

---

subjective complaint of daytime somnolence in assessing his residual functional capacity.

that Plaintiff was "using APAP compliantly", that he had "[n]o issues" and that he "[c]ontinues to have resolution of his daytime somnolence since starting APAP." (AR 643).

Important to note for purposes of this review of the ALJ's decision, Plaintiff's medical records do not contain any notations that his sleep apnea and resulting daytime somnolence, even when Plaintiff was noncompliant with his medical treatment, required him to take a 2-3 hour nap once every day or prevented him from working. Indeed, Plaintiff makes no assertion here that his medical records contain this physical limitation or that any physician prescribed or discussed such a limitation with him. The only evidence of this allegedly required 2-3 hour daily nap is Plaintiff's own statements and testimony.

## III. PROCEEDINGS BELOW

### A. Procedural History

Plaintiff's DIB application was denied initially on July 14, 2015. (AR 204). Thereafter, Plaintiff filed a request for hearing by an Administrative Law Judge on September 3, 2015. (AR 210-211). A hearing was held before ALJ Michael D. Radensky on May 8, 2017. (AR 170-194). Plaintiff, represented by counsel, appeared and testified at the hearing, as well as vocational consultant Jeanine Metildi. Id.

On June 28, 2017, the ALJ found that Plaintiff was "not disabled" within the meaning of the Social Security Act.[5] (AR 13-27). The ALJ's decision became the

---

[5] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. §423(d)(1)(A).

Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on February 13, 2018. (AR 1-7). Plaintiff then filed this action. [Dkt. No. 1].

### B. Summary of ALJ Decision After Hearing

In the ALJ's decision of June 28, 2017 (AR 13-27), the ALJ followed the required five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act.[6] 20 C.F.R. § 404.1520(a)(4). At **step one**, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since December 12, 2014, the alleged onset date. (AR 18). At **step two**, the ALJ found that Plaintiff had the following severe impairments: (a) sleep apnea; (b) obesity; (c) diabetes mellitus; and (d) gout. (AR 18). At **step three**, the ALJ found that Plaintiff "has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." (AR 19).

The ALJ then found that Plaintiff had the following Residual Functional Capacity[7]:

---

[6] The ALJ follows a five-step sequential evaluation process to assess whether a claimant is disabled: Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two. Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate. Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four. Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five. Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled. Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (citing 20 C.F.R. §404.1520).

[7] A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. §§ 404.1545(a)(1), 416.945(1)(1).

> [P]erform light work as defined in 20 CFR 404.1567(b) with additional limitations as follows: unable to climb ladders, ropes, and scaffolds; otherwise, able to perform only occasional postural activities; able to operate foot pedals or controls only occasionally; and unable to work at unprotected heights or near dangerous machinery.

(AR 19).

At **step four**, based on Plaintiff's residual functional capacity and the vocational expert's testimony, the ALJ found that Plaintiff was unable to perform his past relevant work as a delivery truck driver, which the Dictionary of Occupational Titles ("DOT") describes as medium, semi-skilled work, and was performed at a medium level of exertion by Plaintiff; or as a forklift operator, which the DOT describes as medium, semi-skilled work and was performed at a heavy level of exertion by Plaintiff. (AR 21).

At **step five**, the ALJ found that, "[c]onsidering the claimant's age, education, work experience and residual functional capacity, there have been jobs that exist in significant numbers in the national economy that the [Plaintiff] could have performed." (AR 22). The ALJ accepted the vocational expert's testimony that claimant, given his age, education, work experience, and residual functional capacity, would be able to perform the requirements of representative occupations such as: office helper, (DOT 239.567-010, SVP: 2); cashier (DOT 211.462-010, SVP: 2920.687-166); and bench assembler (DOT 706.684-022, SVP: 2). (AR 22). As such, the ALJ found that Plaintiff was "not disabled", as defined in the Social Security Act, at any time from December 12, 2014, through the date of the ALJ's decision. (AR 22).

## IV. ANALYSIS

### A. Issues on Appeal

Plaintiff's Motion for Summary Judgment raises only one issue for review: that the ALJ failed to account for Plaintiff's daytime somnolence in assessing Plaintiff's

residual functional capacity ("RFC").[8] [Dkt. No. 20, Plaintiff's Motion for Summary Judgment, 7]. Plaintiff asserts numerous arguments with regard to this alleged claim of error and Defendant correctly addresses Plaintiff's claim as two-pronged: (1) whether the ALJ properly considered Plaintiff's complaints of daytime somnolence in finding he could perform a range of light work; and (2) whether the ALJ properly evaluated Plaintiff's subjective complaints, including his allegations of daytime somnolence, in finding his statements inconsistent with the record. [Dkt. No. 21, Defendant's Motion for Summary Judgment, 1 and 6].

### B. Standard of Review

A United States District Court may review the Commissioner's decision to deny benefits pursuant to 42 U.S.C. § 405(g). The District Court is not a trier of the facts but is confined to ascertaining by the record before it if the Commissioner's decision is based upon substantial evidence. Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014) (District Court's review is limited to only grounds relied upon by ALJ) (citing Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)). A court must affirm an ALJ's findings of fact if they are supported by substantial evidence and if the proper legal standards were applied. Mayes v. Massanari, 276 F.3d 453, 458-59 (9th Cir. 2001). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

---

[8] Plaintiff also claimed he could not work due to diabetes type 2, gout, hemorrhoid and hypertension. (AR 195). Plaintiff raises no claim of error with the ALJ's assessment of these medical issues and thus the ALJ's findings related to these issues will not be discussed herein.

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotation marks omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (citing Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). However, the Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (citation omitted).

### C. There Is No Legal Error in The ALJ's RFC Assessment

Plaintiff contends that the ALJ did not properly consider his complaints of daytime somnolence in the RFC, which concluded he could perform a range of light work. Plaintiff points to his own statements concerning his daytime somnolence as well as to medical records describing his sleep apnea and somnolence. Plaintiff argues the ALJ should have accounted for his daytime somnolence in the RFC.

Plaintiff's main argument that he is unable to work appears to be that his daytime somnolence requires him to nap multiple times a day for two to three hours at a time. Plaintiff points to no medical evidence documenting these daily naps or any medical advice to take daily naps to treat his somnolence. Rather, Plaintiff relies solely on his own statements and testimony of this purported condition. (AR 180-81, 307).

Plaintiff's testimony alone will not establish that he is disabled. See 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability").

Plaintiff's medical records fail to support his claim of disability based on daytime somnolence. As Defendant notes, "Plaintiff fails to point to any medical opinion stating that he needed to nap during the day, that his drowsiness prevented him from working, or that he had any other limitations not included in the ALJ's RFC finding." [Dkt. No. 21, p. 2]. Indeed, the only medical evidence Plaintiff cites for support is that of Bryan King, M.D., which the ALJ gave "little weight", who also happened to note in March 2017 that Plaintiff's sleep apnea had significantly improved with treatment. (AR 643-46). A physician's notation that Plaintiff's somnolence had improved is not evidence that it had previously been fully disabling. Moreover, the ALJ discounted Dr. King's report, giving it little weight, for the specific and legitimate reason that it did not "document clinical signs and findings consistent with the extreme limitation Dr. King assesses" and because it "uncritically endorse[d] the claimant's subjective complaints...." (AR 21).

### D. **The ALJ Properly Evaluated Plaintiff's Subjective Complaints**

Plaintiff asserts that the ALJ did not properly evaluate his testimony regarding daytime somnolence. Defendant, on the other hand, contends the ALJ properly evaluated Plaintiff's subjective statements, finding them inconsistent with the record.

1. Legal Standard for Evaluating Claimant's Testimony

A claimant carries the burden of producing objective medical evidence of his or her impairments and showing that the impairments could reasonably be expected to produce some degree of the alleged symptoms. Benton ex rel. Benton v. Barnhart, 331

F.3d 1030, 1040 (9th Cir. 2003). Once the claimant meets that burden, medical findings are not required to support the alleged severity of pain. Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) ("claimant need not present clinical or diagnostic evidence to support the severity of his pain") (citation omitted)). Defendant does not contest and thus appears to concede that Plaintiff carried his burden of producing objective medical evidence of his impairments, specifically at-issue here, sleep apnea, and showing that the impairments could reasonably be expected to produce some degree of the alleged symptoms, daytime somnolence.

Once a claimant has met the burden of producing objective medical evidence, an ALJ can reject the claimant's subjective complaint "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton, 331 F.3d at 1040. To discredit a claimant's symptom testimony when the claimant has provided objective medical evidence of the impairments which might reasonably produce the symptoms or pain alleged and there is no evidence of malingering, the ALJ "may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear and convincing reasons for doing so." Brown–Hunter v. Colvin, 806 F.3d 487, 489 (9th Cir. 2015) ("we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination"); Laborin v. Berryhill, 867 F.3d 1151, 1155 (9th Cir. 2017).

The ALJ may consider at least the following factors when weighing the claimant's credibility: (1) his or her reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his or her conduct; (3) his

or her daily activities; (4) his or her work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. Thomas v. Barnhart, 278 F.3d 15 947, 958-59 (9th Cir. 2002) (citing Light, 119 F.3d at 792). "If the ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." Id. at 959 (citing Morgan v. Apfel, 169 F.3d 595, 600 (9th Cir. 1999)).

### 2. The ALJ Provided Clear and Convincing Reasons Supported by Substantial Evidence

Having carefully reviewed the record, the Court finds that the ALJ provided specific, clear and convincing reasons for discounting Plaintiff's subjective complaints. The ALJ found that Plaintiff's subjective complaints were not consistent with the objective medical record; that the medical opinions of record undermined Plaintiff's subjective complaints; and that Plaintiff's daily activities were inconsistent with his subjective complaints.

The ALJ performed a thorough review and analysis of Plaintiff's entire medical record and found Plaintiff's testimony inconsistent with the medical records. While Plaintiff was diagnosed with sleep apnea as reflected in his records, Plaintiff fails to point to any objective evidence to support his claim that he required daily naps of two to three hours per day. The ALJ noted this lack of supporting evidence in the decision. Thus, the ALJ provided specific, clear and convincing reasons why Plaintiff's subjective complaints are not supported by the objective medical records. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." Burch, 400 F.3d at 681. Thus, the

ALJ did not err in considering the sufficiency, or lack thereof, of the objective evidence while weighing Plaintiff's testimony regarding the relevant period.

In addition, medical opinions in the record and cited to by the ALJ in his finding of a restricted light RFC for the relevant period, undermine Plaintiff's testimony. Gayle M. Kookootsedes, M.D. opined that Plaintiff could perform a range of medium work, but was limited in his ability to work at heights or to operate heavy machinery or a motor vehicle due to his history of sleep apnea and daytime somnolence. (AR 410-16). The ALJ properly relied upon this opinion in discounting Plaintiff's subjective complaints. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008) (finding that the medical evidence, including the opinions of two physicians that a claimant could work, supported the ALJ's credibility determination); Moncada v. Chater, 60 F.3d 521, 524 (9th Cir. 1995) (finding that a valid specific reason for rejecting plaintiff's excess pain complaints, among others, was doctor's opinion that plaintiff could perform sedentary work); see also Thomas, 278 F.3d at 957 ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record").

The ALJ also found that Plaintiff's daily activities undermined his testimony. In March 2017, Plaintiff requested an "off-work note" from Dr. King to complete his hearing to have his DMV commercial license renewed and described that he "continues to have resolution of his daytime somnolence since starting APAP." (AR 643). In September 2015, nine months after filing for disability, Plaintiff also reported that he exercised for 150 minutes or more at a "moderate or strenuous level," three times a week. (AR 435). An ALJ is permitted to consider daily living activities in his credibility analysis. See 20 C.F.R. § 404.1529(c)(3) (daily activities are a relevant factor which will

be considered in evaluating symptoms); see also Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) ("In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors"). Daily activities may be considered to show that Plaintiff exaggerated her symptoms. See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (ALJ properly recognized that daily activities "did not suggest [claimant] could return to his old job" but "did suggest that [claimant's] later claims about the severity of his limitations were exaggerated.").

Finally, the ALJ also discounted Plaintiff's subjective complaints on the grounds that Plaintiff had received conservative treatment during the period at issue and that numerous times throughout the medical records Plaintiff was noted to be non-compliant with his prescribed treatment for sleep apnea. (AR 20). Both of these grounds were permissible reasons to discount Plaintiff's subjective complaints. See Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (noting that proof of "conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment"); Mojarro v. Berryhill, 2018 WL 3947777, 746 Fed. Appx. 672 (9th Cir. 2018); see also Trevizo v. Berryhill, 871 F.3d 664, 679 (9th Cir. 2017) ("A claimant's subjective symptom testimony may be undermined by an 'unexplained, or inadequately explained, failure to . . . follow a prescribe course of treatment.'") (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)).

Based on the clear, convincing and specific reasons for partially rejecting Plaintiff's subjective complaints and the substantial evidence to support the ALJ's determination, the Court concludes that the ALJ did not commit error by not including

additional restrictions beyond those already included in the RFC due to Plaintiff's daytime somnolence.

## V. **CONCLUSION**

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED, and the action is DISMISSED with prejudice. Judgment shall be entered accordingly.

DATE: March 4, 2020

                     /s/ Autumn D. Spaeth
THE HONORABLE AUTUMN D. SPAETH
United States Magistrate Judge